Curtis OSTREM, Appellant,

v.

ALASKA WORKMEN'S COMPENSATION BOARD et al., Appellees.

No. 1809.

Supreme Court of Alaska.

July 9, 1973.

540–541, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). Martel v. State, 511 S.W.2d 1055, 1973 (Alaska 1973).

Stephen C. Cowper, Fairbanks, for appellant.

James R. Blair and Lloyd I. Hoppner of Rice, Hoppner, Blair & Associates, Fairbanks, for appellees Burgess & Employers Commercial Union.

Dennis Cook, Fairbanks, for appellees Cummins & Insurance Co. of America.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

In this case we are confronted with the question of whether Curtis Ostrem was an employee of either Cummins Alaska Service (Cummins) or Burgess Construction Company (Burgess), or both, so as to be entitled to benefits under the Alaska Workmen's Compensation Act.[1] The Alaska Workmen's Compensation Board (the Board) found that he was an independent contractor and not entitled to compensation.

On February 20, 1970 Cummins secured the services of Ostrem to install a rebuilt diesel engine pursuant to warranty into a piece of heavy equipment owned by Burgess Construction Company, and located at Burgess' camp 50 miles north of Livengood, Alaska. While he was on the job, appellant, Ostrem, lived in the Burgess camp since there was no other place available.

Ostrem testified at the hearing that on this and similar jobs, he was paid on what is referred to as a "portal to portal" basis at the rate of $10 per hour with a minimum of 12 hours per day, plus room, board and travel expenses. On such jobs, Ostrem was normally paid after submitting an invoice. He supplied his own tools, except for one of a specialized nature for the particular machine, which was supplied by Cummins.

Ostrem had an Alaska business license, but no shop of his own. Appellant was a member of Local 302 and was hired out of the union hall at times, although not on this occasion. His hourly rate of pay on this job was equivalent to union scale.

On February 21, 1970 Ostrem worked on the engine all day in the Burgess shop until a helper furnished by Burgess had to leave and Ostrem could do no more work alone. While Ostrem was picking up his tools, a Burgess driller entered the shop and stated that a fitting had broken off from a piece of equipment, that fuel was leaking on the ground, and that he needed it fixed right away. Ostrem began to chip out a broken bushing, and in the process a small piece of steel came loose and entered his eye.

Ostrem sought compensation from both Cummins and Burgess, and the matter was heard before the Board in Fairbanks on March 9, 1972. The Board found that Ostrem was an independent contractor and not an employee of either Burgess or Cummins, and concluded that he was not entitled to any workmen's compensation benefits.

On appeal to the superior court, the Board's order was affirmed by summary judgment in favor of the Alaska Workmen's Compensation Board, Burgess Construction Company, Cummins Alaska Service, Inc., and their respective insurance companies. Ostrem then filed this appeal.

The test to be used in reviewing the decision of the Board was most recently stated by us in Anderson v. Employers Liability Assurance Corp.,[2] as follows:

Our review of determinations of the Alaska Workmen's Compensation Board

---

1. AS 23.30.005–.270.

2. 498 P.2d 288, 289–290 (Alaska 1972).

is limited by the substantial evidence test. A decision of the board may not be overturned unless it is unsupported by substantial evidence on the record taken as a whole. It is not important that the particular situation before the board is subject to more than one inference. What matters is whether the determination of the board is supported by substantial evidence on the whole record. (Citations omitted.)

This test is limited by the language of Laborers & Hod Carriers Union Local 341 v. Groothius,[3] which stated:

The local is correct in noting that the reviewing court is not to "weigh the evidence or choose between competing inferences reasonably to be drawn from the evidence". But when the decision "rest[s] on erroneous legal foundations," it cannot be supported on appeal to this court. (Footnotes omitted.)

■ This court then must review the record of the Board to determine whether there was substantial evidence on the record taken as a whole to support the conclusion that appellant, Ostrem, was an independent contractor, and to determine whether the Board applied the proper legal tests.

In Searfus v. Northern Gas Co., we set forth the test to be applied in determining whether an injured claimant was to be considered as an employee under the provisions of the Alaska Workmen's Compensation Act, stating:

Professor Larson states that the theory of compensation legislation is that the costs of all industrial accidents should be borne by the consumer as a part of the cost of the product. From this principle, Professor Larson infers that "the nature of the claimant's work in relation to the regular business of the employer" should be the test for applicability of workmen's compensation, rather than the master-servant test of control which has been developed to delimit the scope of a master's vicarious liability to third persons for torts committed by his servants.

It follows that any worker whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the presumptive area of intended protection.

Terming this approach the "relative nature of the work" test, Larson would have the trier of fact determine "employee" status through consideration of the character of the claimant's work or business, and the relationship of the claimant's work or business to the purported employer's business. (Footnotes omitted.) [4]

The "relative nature of the work" test has two parts: first, the character of the claimant's work or business; and second, the relationship of the claimant's work or business to the purported employer's business. Larson urges consideration of three factors as to each of these two parts. With reference to the character of claimant's work or business the factors are: (a) the degree of skill involved; (b) the degree to which it is a separate calling or business; and (c) the extent to which it can be expected to carry its own accident burden. The relationship of the claimant's work or business to the purported employer's business requires consideration of: (a) the extent to which claimant's work is a regular part of the employer's regular work; (b) whether claimant's work is continuous or intermittent; and (c) whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of the particular job.

In ascertaining whether there was substantial evidence on the record taken as a whole to justify the Board's finding that

3. 494 P.2d 808, 812 (Alaska 1972).

4. 472 P.2d 966, 969 (Alaska 1970).

Ostrem was an independent contractor, we first look to the character of Ostrem's work or business. There was sufficient evidence that a high degree of skill was involved in his work. There was also evidence indicating that Ostrem was engaged in a separate calling or business. This included the testimony that he established his own rate of pay, established his own minimum hours, established his mileage rate, took out a business license, was paid after submission of an invoice, and paid his own income tax. Appellant further testified that he generally was independent and unsupervised, that he had worked for up to half-a-dozen other people under arrangements similar to this, and that he was reputed to be available for heavy equipment work. The Board also considered that the invoice submitted in this case bore the heading "Curt's Diesel Service", and the fact that appellant utilized his own tools, except for the additional Cummins tool specified for the particular job. As to the extent to which Ostrem could be expected to carry his own accident burden, the third factor in examining the character of claimant's work, no direct evidence or testimony was introduced. There was testimony, however, that Ostrem had secured the advice of an accountant in establishing his business. Most of the necessities of establishing an independent business, with the exception of securing workmen's compensation coverage, seem to have been considered. One reasonable inference from the facts is that Ostrem could be expected to carry his own workmen's compensation coverage. We are not here dealing, of course, with the question of whether or not he did carry workmen's compensation coverage, but only with the question of whether he could have been expected to carry his own accident burden, either by workmen's compensation insurance or some other means.

Looking to the second major test, the relationship of the claimant's work or business to the purported employer's business, the first factor to be considered is the extent to which claimant's work is a regular part of the employer's regular work.[5] There is evidence from which the Board could find that Ostrem's work was not a regular part of the employer's regular work. Ostrem worked for a number of businesses and was generally on call. He had never worked directly for Cummins before, was undertaking a job which apparently involved only 40–50 working hours, had worked for other people under this type of arrangement, and generally was reputed to be available to do such work. In light of these facts, it appears that the job was required at unpredictable intervals and was not protracted, and that the specialist called into handle the installation could be considered an independent contractor.

The second subsidiary factor in testing the relationship of the claimant's work or business to the purported employer's business is whether the work is continuous or intermittent. Here the work was a single job for Cummins involving but 40–50 working hours and thus could not be considered continuous.

The third factor is whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job. Here it seems clear that Cummins was contracting for the installation of a single engine in a loader, a job that would take at most a few days. He was thus engaged for the completion of a particular job.

5. Larson sets forth guidelines for this test in 1A of The Law of Workmen's Compensation, sections 45.31, 45.31(a) and 45.31(b), at 716–724. An article in 1 UCLA-Alaska Law Review 40, 56 (1971) suggests several questions to be asked in applying the Larson tests to a skilled laborer: Does he work for many people, "on call", for a few businesses, or for a single employer? Does he employ private listings, or work in connection with a general contractor or a subcontractor? If the latter, how often with the same contractor?

Upon the basis of the above evidence, the Board concluded that appellant was an independent contractor and not an employee of Cummins. Applying the *Searfus* legal tests, we find that although there was evidence to the contrary and more than one inference could have been drawn from the testimony, the Board's determination was supported by substantial evidence. We accordingly concur in the superior court's affirmance of the Board's decision on this point.

Ostrem has more than one string to his bow, however, and argues that even if he is not to be considered an employee of Cummins he is still entitled to compensation either as an emergency employee or as a borrowed servant of Burgess. When Ostrem was injured he was performing services for the benefit of Burgess. This alone, however, is not sufficient to justify payment of compensation. A determination must be made as to whether Ostrem was performing services as a loaned or emergency employee.

█ In Reader v. Ghemm Co.,[6] we quoted the Restatement of Agency definition of a loaned servant, as follows:

A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

It is clear that to be a loaned servant one first must be a servant of a master who loans his employee's services to another. Since Ostrem was found to be an independent contractor as to Cummins rather than an employee, the loaned servant doctrine is inapplicable.

A more difficult question is presented as to whether Ostrem was an "emergency employee" of Burgess. Larson, in his discussion of emergency services, states:

It is well established that a person who is asked for help in an emergency which threatens the employer's interests becomes an employee under an implied contract of hire. The most familiar example is that of the farmer or bystander who is called upon by an employed trucker to help get the truck out of the mire in which it is stuck. In such a case it is possible to say that the employee, although ordinarily without power to make contracts binding his employer, has implied authority to employ an assistant, since the employer must be presumed to intend that necessary measures be taken to set the employer's business again in motion. (Footnote omitted.) [7]

It is entirely consistent with the theory of workmen's compensation legislation that a business which utilizes the services of a third person in an emergency should bear the risk of his injury, the costs incurred being ultimately borne by the consumer as a part of the cost of the product.[8]

An independent contractor or self-employed person may as readily become an emergency employee as may one who is already an employee of a different employer. In City of Seward v. Wisdom [9] this court dealt with the concept of an emergency employee. In that case, we ruled that a volunteer helping after the earthquake should not be considered an employee of the city, and therefore his wife could not

---

6. 490 P.2d 1200, 1203 (Alaska 1971), quoting 1 Restatement (Second) of Agency § 227 (1957).

7. 1A Larson's Workmen's Compensation Law § 47.42(c), at 780 (1967).

8. The social philosophy of workmen's compensation legislation is discussed in

Searfus v. Northern Gas Co., 472 P.2d 966, 969 (Alaska 1970).

9. 413 P.2d 931 (Alaska 1966). Citation of this case is not necessarily to be construed as agreement by all present members of the court with its holding.

recover workmen's compensation benefits from his death. The decision was based on the fact that Wisdom had volunteered to help without any request for assistance by the city official in charge. Ostrem's claim is distinguishable from *Wisdom* in that Ostrem was asked to help and did not volunteer his services. Nor do we consider the fact that he received no remuneration for his services as controlling. The test should be whether or not he had the right to compensation, not whether he demanded payment.

 However, not every service at the request of another creates an emergency employee situation:

> For this kind of implied hiring authority to arise there must, of course, be a genuine emergency ruling out normal procedures for hiring or for obtaining permission to engage assistance.[10]

Although the claimant raised the issue before the Alaska Workmen's Compensation Board as to whether he was an emergency employee, the Board's decision makes no findings or conclusions directed to that doctrine.[11] We, therefore, find it necessary to remand this matter to the superior court for the purpose of having it direct the Board to make findings and conclusions with reference to the issue of the emergency employee doctrine. Specifically, the Board should enter findings as to whether an emergency existed at the time that Ostrem was requested to assist the Burgess employee, and whether Ostrem would have had the right to compensation for such services under an implied contract of hire if he had so requested. The Board may take additional evidence on these questions, if necessary, and should then decide whether or not Ostrem is entitled to compensation as an emergency employee.

Remanded.

10. 1A Larson's Workmen's Compensation Law § 47.42(c), at 781 (1967).

11. The Board did state: "In our opinion the applicant, at least in the present case, is an independent contractor and is not

an employee of either of the defendants". Since there were no specific findings or conclusions made pertaining to the emergency employee doctrine we cannot determine whether that quoted conclusion was meant to apply to that issue.