Ed KROLL, Appellant,

v.

Donald D. REESER, Appellee.

No. 6035.

Supreme Court of Alaska.

Nov. 12, 1982.

---

James E. Douglas, Steven G. Marks, Baxter and Douglas Law Offices, Juneau, for appellant.

Thomas W. Findley, Findley & Brinkman, Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

**PER CURIAM.**

Donald Reeser lost part of his right ring finger as the result of an injury incurred while working. In this workers' compensation appeal, the question is whether he was an employee of the owner of the premises, Ed Kroll, or of his father, Robert Reeser.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Kroll was a serviceman with a cable TV company in Juneau. In his spare time, he was helping to build a four-plex on a lot he owned. The building was to consist of three one-bedroom apartments and quarters for Kroll and his family.

In the summer of 1976, the original building contractor fell behind schedule, and Kroll obtained the bank's approval to hire someone else to do framing and exterior work. Kroll, who had some ten or twelve years previously built a house, intended to do the interior work.

Kroll contacted Robert Reeser, Donald's father, to ask if the Reesers were interested in working on the building. Robert Reeser, a licensed general contractor in Washington state, had come to Juneau that summer to work on a house for his niece. He carried workers' compensation insurance which covered him in Washington but not in Alaska; he had been unable to obtain an Alaska contractor's license prior to this time.

Robert agreed that he and his two sons would work on Kroll's building, since the work at the niece's house was delayed by material shortage. The framing was about a week or ten-day job, but Robert did not commit himself or his sons to complete it since they might have to go back to the niece's job at any time.

Kroll and Robert agreed that Kroll would pay an hourly sum for the services of Robert and his two sons. The Reesers gave Kroll an accounting of their hours, and Kroll paid Robert a lump sum, with the father then paying his sons from that amount. Kroll made no deductions for social security or income tax. According to Robert, he told Kroll that "my State Indus-

trial was no good up here" and Kroll responded "don't worry about it; I have insurance. Through Allstate." In addition to the Reesers and Kroll and his family, Kroll had one or two other people working on the framing.

Both Kroll and the Reesers provided tools. Donald was injured while using a radial saw apparently furnished by Kroll.

After Donald was injured, Kroll sought to have his liability insurer pay for Donald's damages, but the insurer declined on the ground that Donald had been Kroll's employee, and that his sole remedy, therefore, was under the Alaska Workers' Compensation Act.

Donald thereafter filed a claim for benefits with the Workers' Compensation Board, which ruled that Donald had been Kroll's employee as defined by the Workers' Compensation Act. In a written decision the Board stated:

> Alaska's case of *Searfus v. Northern Gas Company*, 472 P.2d 966 seems to draw a distinction as to whether "the nature of the claimant's work in relation to the regular business of employer" should be the test rather than the master-servant test. Building a house is not the defendant's normal business; however, it is the normal business of the applicant's father. It would be the normal holding from the Searfus case that the father should be the employer.
>
> In the case at bar, the distinguishing feature is that the father did not want to be considered the employer and so contracted. He specifically wanted to have the defendant cover him and his two boys with workmen's compensation insurance. Since the contract of employment is different from his regular independent contract status, it does not fall within the *Searfus* case.

This was the entire expressed rationale of the board's decision. Kroll appealed to the superior court, which affirmed. This appeal followed.

## II. EMPLOYEE OR INDEPENDENT CONTRACTOR

Kroll asserts that the Board's decision on its face reveals that the wrong legal test was utilized. Kroll submits that the correct legal test for resolution of disputes as to the employment status of an injured worker, for purposes of a workers' compensation claim, was established in *Searfus v. Northern Gas Co.*, 472 P.2d 966 (Alaska 1970), and further elucidated in *Ostrem v. Alaska Workmen's Compensation Board*, 511 P.2d 1061 (Alaska 1973). It is Kroll's contention that the parties' negotiations as to insurance may not be relied upon to the exclusion of the *Searfus-Ostrem* standards. Kroll thus contends that the Board gave undue weight to the parties' own attempts to fix responsibility for the acquisition of insurance for a worker.

Donald, on the other hand, argues that the Board properly applied the *Searfus-Ostrem* test. He characterizes Kroll's argument as only a disagreement with the Board's application of the *Searfus-Ostrem* test to the particular facts of this case. Donald contends that the Board determined that he was an employee based on the overall facts of the case. Further, he denies Kroll's assertion that the Board made a legal determination that there was a shift of responsibility for workers' compensation coverage because both parties believed Ed Kroll would provide insurance.

The test for distinguishing between an employee and an independent contractor for purposes of the application of workers' compensation is the "relative nature of the work test," advocated by Professor Larson, adopted by this court in *Searfus* and elaborated upon in *Ostrem*.[1] However, in this case the question is not whether Donald is an employee or an independent contractor. He is obviously an employee. The question is whether he was employed by his father, or by Kroll. The situation is

---

1. In adopting this test, we rejected the conventional master-servant "control" test utilized in the tort and contract contexts generally.

thus that which was presented to this court in *Ruble v. Arctic General, Inc.,* 598 P.2d 95, 96–97 (Alaska 1979). There we stated:

> Both parties discuss at great length the various tests that we have used in the past to determine whether a person was an employee for workers' compensation purposes.

The word "purposes" was footnoted and the footnote stated:

> The doctrines discussed by the parties include the "nature of the work" test, adopted in *Searfus v. Northern Gas Co.,* 472 P.2d 966, 969–90 (Alaska 1970); the "contract of employment" test relied on in *Selid Construction Co. v. Guarantee Ins. Co.,* 355 P.2d 389, 393 (Alaska 1960); and the "right of control" test, which we used in *Cordova Fish & Cold Storage Co. v. Estes,* 370 P.2d 180, 184 (Alaska 1962).

The text of the opinion then continued:

> Those tests, however, were designed to differentiate employees from independent contractors, and have not proved useful here, where the question is whose employee Ruble was, rather than whether or not he was an employee at all.
>
> In his test on workers' compensation law, Professor Larson discusses factors to be considered in determining the employer in situations involving joint employers and joint employment. According to Larson, a special employer . . . becomes liable for workers' compensation only if the employee . . . has made a contract of hire, express or implied, with the special employer, the work being done is essentially that of the special employer, and the special employer has the right to con-

trol the details of the work. In the usual case involving multiple employers, the employee is seeking to hold a particular employer liable for workers' compensation. In such cases, the liberal purposes of the workers' compensation act, to benefit the employee, and the presumption that a claim comes within the provisions of the act apply.

598 P.2d at 97 (footnotes omitted).

In our opinion, the Board's decision indicates on its face that it applied an incorrect legal test. While the parties' agreement as to insurance may have a bearing on the nature of an employment relationship and workers' compensation coverage,[2] the Board cannot simply base its decision on the alleged agreement: the totality of all the relevant circumstances still controls. To ignore the factors outlined in *Ruble* and rely solely on the alleged private agreement would be to substitute common law liability[3] for the statutory workers' compensation obligation. Kroll may be liable at common law, but Donald's actual employment status for purposes of workers' compensation is determined by the legal test established by *Ruble.*

## III. DEFINITION OF EMPLOYER

The determination of whether Donald was an "employee" under the *Searfus-Ostrem* test requires a threshold determination of whether Kroll was an "employer" within the ambit of the Workers' Compensation Act. The issue of whether Kroll was an employer is critical both as a precondition to the application of the Act[4] and as

2. *See* 1C A. Larson, The Law of Workmen's Compensation § 46.40, at 8–219 (1980):

> In line with the majority view that insurance coverage is at most persuasive but by no means conclusive evidence of [statutory] coverage, a considerable number of cases have appeared holding this factor to have been outweighed by other factors showing independent contractorship.

Larson speaks of agreements that one or the other party will bear the cost of workers' compensation insurance; Kroll made no such agreement. He is simply alleged to have assured Robert that his liability insurance would cover any injuries.

3. There is nothing in the record of this case to indicate that Donald attempted to hold Kroll liable for his damages under common law tort, contract, or quasi-contract theories. Nor is there any indication that either party attempted to assert a claim against Kroll's liability insurer after the claim for Donald's injury was initially denied. We express no opinion as to the viability of any of these possible claims.

4. AS 23.30.265(11) states " 'employee' means an employee employed by an employer as defined in paragraph (12)."

an element of the relative nature of the work test. Thus, only if it is determined that Kroll acted as an employer in the course of his construction activities may Donald reasonably be said to have been engaged in work which was "a regular part of the employer's regular work." *Ostrem v. Alaska Workmen's Compensation Board,* 511 P.2d at 1063.[5]

For purposes of the Act, an employer is defined as "a person employing one or more persons in connection with a business or industry coming within the scope of this chapter." AS 23.30.265(12). The Board stated in this regard:

> The definition of subsection (12) 'in connection with a business or industry coming within the scope of this chapter' is interpreted to mean *all business or industry is to be considered as covered by the Act* and that interpretation would follow Larson's which includes every person in the service of another under contract. [Emphasis added.]

The Board's broad construction of AS 23.30.265(12) fails to give proper weight to the statutory limitation to employment relationships "in connection with a business or industry." In Larson's terms,[6] the policy question is whether Kroll's construction activity, either by itself or as an element of his rental activities,[7] was a profit-making enterprise which ought to bear the costs of injuries incurred in the business, or was the construction activity simply a cost-cutting shortcut in what was basically a *consumptive* and not a *productive* roll played by Kroll.[8]

We conclude that the Board's statement with respect to the parameters of the statutory definition of an employer reflects an erroneous standard of law. As a result, the threshhold issue of whether Kroll's construction activity was sufficient to establish his status as an employer must also be remanded to the Board for further consideration.[9]

REVERSED and REMANDED.

---

5. The concept of "regular work" as used in *Ostrem* as part of the test for differentiating between employees and independent contractors is a subclass of "business" as used in AS 23.30.265(12). Whether a person engages in a "business" within the meaning of AS 23.30.265(12), is relevant for purposes of determining the "extent to which claimant's work is a regular part of the employer's regular work." *Ostrem,* 511 P.2d at 1063. The Board's first obligation is to ascertain the nature of the particular business enterprise in which the injury allegedly occurred, and then to determine whether the work being done by the claimant is a regular part of that business.

6. *See* 1C A. Larson, *supra* note 2, § 50.21.

7. *Id.* at § 50.24.

8. *Id.* at § 50.21, at 9–70 to 9–71 & nn. 4 and 5. *But see Donald v. Whatley,* 346 So.2d 898 (Miss.1977).

9. *Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981).