*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| VIRGIL A. ADAMS, | ) |
| | ) Supreme Court No. S-17227 |
| Appellant, | ) |
| | ) Alaska Workers' Compensation |
| v. | ) Appeals Commission No. 15-029 |
| | ) |
| STATE OF ALASKA, WORKERS' | ) O P I N I O N |
| COMPENSATION BENEFITS | ) |
| GUARANTY FUND; MICHAEL A. | ) No. 7473 – July 24, 2020 |
| HEATH d/b/a/ O&M ENTERPRISE; | ) |
| and THE MICHAEL A. HEATH | ) |
| TRUST, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant. Anna Jay and Siobhan McIntyre, Assistant Attorneys General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee State of Alaska, Workers' Compensation Benefits Guaranty Fund. No appearance by Appellees Michael A. Heath or The Michael A. Heath Trust.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

# I. INTRODUCTION

A carpenter fell from a roof while working and suffered a severe injury. He filed a claim with the Alaska Workers' Compensation Board, and, because the property owner for whom he worked had no workers' compensation insurance, the Workers' Compensation Guaranty Fund was joined to the workers' compensation case. The Fund disputed whether the property owner for whom the carpenter worked was an "employer" as defined in the Alaska Workers' Compensation Act and contended the worker's intoxication caused the accident. The Board decided the injury was compensable based on two findings: (1) the property owner was engaged in a real-estate-related "business or industry" and (2) the worker's alleged intoxication did not proximately cause the accident. The Fund appealed to the Alaska Workers' Compensation Appeals Commission; the Commission reversed because, in its view, the Board applied an incorrect legal test in determining whether the property owner was an employer and no evidence in the record could support a determination that the property owner was engaged in a "business or industry" at the time of the injury. The Commission decided the intoxication issue was not ripe for review. We reverse the Commission's decision because the Board did not legally err and substantial evidence supports its employment-status decision, and we remand to the Commission for consideration of the intoxication issue.

# II. FACTS AND PROCEEDINGS

## A. Facts

Virgil Adams, a self-described journeyman carpenter, worked sporadically from 2009 to 2011 at a house located on Snow Bear Drive in Anchorage. He suffered

a "T12 burst fracture with incomplete spinal cord injury" when he fell from the house's roof in August 2011, and he now is permanently and totally disabled.[1]

The property's legal owner at the time of the accident was The Michael A. Heath Trust; Michael A. Heath is both the trustor and trustee. Heath lived in the house, rented out part of it, and used part of it as a music or recording studio. In 2011 Heath also owned a duplex rental property in the Bronx, New York and a property in White Plains, New York, but there is no evidence the White Plains property generated income. He testified that he previously had owned a trailer in Anchorage but was unsure when he had sold it. The only income sources on Heath's 2011 income tax return, aside from his Permanent Fund Dividend, were rental income, "trailer payments," a small amount of interest income, and a cancelled debt. Heath said all income he had in 2011 was included on his tax return, but he also received financial help from his family.

Prior to 2011 Heath had a business license for O&M Enterprise, but he had no business license at the time of the accident. O&M Enterprise operated as a partnership or a sole proprietorship and for two years listed a physical address on Brayton Drive in Anchorage. The Brayton Drive address also was the physical address listed for WHP Global, another business Heath operated; Heath had a trailer there, which he identified as his then home. O&M Enterprise was licensed in different fields over time: entertainment work — Heath explained he sometimes "thr[e]w parties and other stuff like that" — real estate rental and leasing, and most recently "specialized design services." Heath testified that all of his work was "part of O&M Enterprise," even if he did not have a business license. Heath said that he had business meetings in public places and did not have a physical office except a post office box.

---

[1]     *See* AS 23.30.180 (defining permanent total disability determination).

Heath's business activities in 2011 were a focus of this case.  When asked at his deposition whether his occupation in 2011 was real estate, he answered "[p]robably so" and "it could have been."  He clarified that he was "talking about buying, selling, and renting" real estate but that he did not "have a business license in the real estate business."  He added:  "I have a business license though and it's business to business and . . . that's the mechanism of my company.  Straight business to business."

Adams and Heath had an unconventional employment relationship.  Adams testified that he originally met Heath through a former coworker who had some type of business relationship with Heath, although it was "[n]ot legal business."  In 2009 Heath asked Adams to build a garage at the Snow Bear Drive property, and Adams agreed.  Heath designed the building.  Heath wanted Adams to bid the job, but Adams insisted on an hourly wage.  At the time of the accident, Heath had been paying Adams in cash, for the most part daily.  Adams received neither a 1099 nor a W-2 tax form for the work, so Adams (on the advice of his tax advisor) had not reported on his tax returns any income from Heath.  When asked, Adams agreed he was "working under the table" for Heath.

The job site was as unconventional as the employment relationship.  Adams described the job site as "a revolving frat house."  Heath called the Snow Bear Drive property in 2010 and 2011 "just a fun place."  When asked what construction-related activities he had done at the property, Heath was "not so sure what [he] did and what [he] didn't do, just it was a project and happy times."  Adams's brother, who worked at the Snow Bear Drive property a couple of days as an electrician, testified that the job site had a cooler of beer located next to the area where he worked.  Workers drank beer, and Heath never told them not to.

Testimony about events the day of the accident conflicted, but because the Board found Adams credible and Heath not credible, we rely on Adams's version.[2] Heath picked up Adams and his brother for work on the house. They stopped on the way to the job, and Adams bought beer. It is unclear when work began; Adams testified that they treated it like morning but that it was afternoon.

Adams indicated he and at least two others were working on the house that day. Adams had been trying to locate the source of a leak in the roof and had removed a metal covering near the chimney; Heath instructed Adams to replace the metal covering. The house had multiple levels. To reach the chimney's level, a ladder had been placed on a lower-level roof and shored up with cribbing consisting of scrap wood from the job site. Adams explained that "cribbing" is "support under one of the [ladder] legs," used to provide a level platform. Adams had put the cribbing in place a couple of weeks earlier and had climbed the ladder "many times" before without incident. He did not check whether the cribbing remained solidly in place when he went up the ladder the day of the accident.

Before ascending to the roof, Adams had consumed two beers and was on his third, but he later testified he was not intoxicated. Adams testified that Heath also had given Adams cocaine, which he snorted shortly before climbing the ladder. As Adams was standing on the ladder and working on the roof, the cribbing gave way. Adams fell about 30 or 40 feet, and upon impact he noticed a loss of sensation in his legs. One of Heath's acquaintances summoned help, and emergency services arrived about 15 minutes later.

---

[2]     *See* AS 23.30.122 ("The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony . . . is conclusive even if the evidence is conflicting or susceptible to contrary conclusions.").

A paramedic examined Adams, noted in his report that Adams smelled of alcohol, and asked about his drinking because the paramedic planned to administer fentanyl, which interacts adversely with alcohol. Adams indicated he had consumed three beers. The paramedic did not think Adams was sufficiently intoxicated to prevent administering fentanyl; the paramedic first administered a small dose, then a larger one after observing no adverse effects. The paramedic described Adams as "pretty critical" and "showing signs of shock." Adams was transported to the hospital, where he had emergency surgery for a "severe T12 burst fracture" and repair of a "dural tear with laceration of the cord." His drug screen was positive for cocaine. Adams spent time in the hospital and has ongoing medical needs.

B.     Proceedings

About ten days after the accident, Adams filed an injury report with the Board, naming Heath as his employer and saying Heath was uninsured. In September Adams filed a written workers' compensation claim naming Heath and O&M Enterprise as his employer and sought a number of benefits. In an amended claim, Adams asked that the Fund be joined because his employer was uninsured. The Fund controverted benefits based on intoxication. Over a year after the first written claim was filed, Heath filed a "Notice of Compensation Fr[au]d," alleging that Adams had never worked for O&M Enterprise or Heath's Trust. Heath also raised intoxication as a defense. Adams later petitioned the Board to add the Trust as a possible employer.

The Fund asserted multiple defenses to the claim and petitioned the Board to bifurcate the proceedings. The Fund contended that: (1) Heath was not an "employer" as that term is defined in the Act; (2) Adams was an independent contractor and not an employee; and (3) Adams's claim should be barred because his intoxication

proximately caused the injury.[3] The Fund proposed a series of hearings on its defenses, with a final hearing on the merits of Adams's claims if the Board rejected all of the defenses. Adams asked that the petition be denied. The Board granted the petition in part, electing to hold one hearing on all the defenses and, if Adams prevailed at that hearing, to then hold a separate hearing to resolve disputes about Adams's entitlement to specific benefits.

The hearing on the Fund's defenses was held in July 2015 and featured testimony from Adams, Heath, a doctor certified to review drug and alcohol tests, the responding paramedic, and a nearby neighbor of Heath's who had helped construct the driveway at Snow Bear Drive. Heath was not represented by counsel at the hearing, although he previously had been.

Adams's hearing testimony was generally consistent with his earlier deposition testimony. He testified to having worked sporadically at the Snow Bear Drive property from 2009, when Heath first hired him, until the 2011 accident. Adams said Heath had made a garage into a separate apartment and that two couples and a child occupied the apartment while Adams was working there in 2011. Adams testified that in the house there was a recording or music studio that he had seen Heath use, and a photo of the studio was admitted at the hearing. Adams stated Heath had "show[n] [him] a recording that [Heath] . . . recorded there in his upstairs." From Adams's point of view, Heath was running some type of business from his house. When Adams was asked whether he had seen people come to the house for business, he implied that at least some of Heath's business activities were illegal.

---

[3]     Alaska Statute 23.30.235 provides in pertinent part that compensation "may not be allowed for an injury . . . proximately caused by intoxication of the injured employee or proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician."

Adams testified that a number of people did construction work on the Snow Bear Drive property, most of them Heath's friends or acquaintances. Adams stated that he saw Heath pay other workers and that "sometimes money was changing hands that didn't have anything to do with the job." Heath at times worked on the house as well.

Heath's neighbor testified that he lived nearby and had provided "dirt work" services for the Snow Bear Drive property's driveway. The neighbor met Adams while working for Heath. The neighbor had observed Adams and others doing construction work on the property and understood that Heath rented out part of the house. The neighbor did not know whether other workers were paid, but Heath paid the invoice for the driveway work.

Heath testified at the hearing, but, like his earlier deposition testimony, his testimony was evasive and confusing. Heath testified about his businesses, both O&M Enterprise and WHP Global. According to Heath, WHP — which stands for Warehouse Production — "was supposed to be the studio that [he] was promoting," and it earned income only when it did "parties and stuff like that." Heath asserted that he did no business with O&M Enterprise in 2011 and that it was not a construction or roofing company. He said he rented an apartment in the Snow Bear Drive property to a friend. Heath indicated that in 2011 he owned the Bronx property, that he no longer did, and that he may have owned a trailer in Anchorage. He testified that his mother managed the Bronx property.

Heath denied knowing why Adams was at his house on the day of the accident. Heath's position was that Adams was a volunteer, as were all the people working on the house. He said his friends often came over, staying with him and helping around the house; in his words: "[T]hey call it chillin'." Heath said he had only once hired someone to work on the roof leak, saying "they did the magnificent job" but there still was a leak. Heath denied ever talking to Adams about the leak. As to the studio

photo Adams had introduced, Heath indicated that only he and no one else used the equipment and that he had mixed music there; he said he had not done any shows in 2011.

Heath was cross-examined about inconsistencies between his deposition and hearing testimony. He said at one point that his "deposition is whatever [he] meant and that's it." When confronted with his use of a Brayton Drive address on an expired business license and his ownership of and residence at the trailer at that address, Heath nonetheless refused to concede that he had operated O&M Enterprise from his home. When confronted with an expired business license that showed O&M Enterprise was in the real estate business, Heath said: "I can't answer to the question except for what's on record . . . ."

In response to questions from a Board member, Heath denied paying Adams or other workers in any way, saying he had not given them money, drugs, or alcohol for work on the Snow Bear Drive property. After denying he had paid in cash or in kind for labor, Heath commented: "They think the girls like it." Heath denied ever having given any friends instructions about helping with construction activities; according to him, they would "just basically . . . figure it out." When the Board asked him about O&M Enterprise, he said that it was "always there" even though he had not had a business license for it since 2007. When asked if he would "operate that business and generate income without a business license," he responded: "Not necessarily . . . ."

The Board issued an interlocutory decision determining that at the time of the accident Adams was Heath's employee, not an independent contractor, and that Adams's alleged intoxication was not a proximate cause. The Board did not explicitly address whether Heath was an "employer" as defined in the Act. The Fund moved for reconsideration or modification, contending that the Board had not addressed whether Heath or O&M Enterprise met the Act's definition of "employer." The Board modified

in part its decision, deciding that when Adams was injured Heath was doing business as O&M Enterprise and his "business or industry" was "the buying, managing, and selling of real estate."

The Fund sought Commission review shortly after the Board's reconsideration decision. The Fund filed both a petition for review and an appeal in the Commission, contending (as it had in the reconsideration petition) that the Board's decision was a final decision. The Commission denied the petition for review and stayed the appeal pending a final resolution.

In March 2017 the Board held a hearing on Adams's claim for specific benefits and issued its final decision in June. It found Adams entitled to a number of benefits, ordered Heath (or the Fund) to pay them, and awarded Adams attorney's fees and costs.

The Fund revived its appeal, listing two issues for review: the Board erred by deciding that (1) Heath was "engaged in the 'business and industry' of buying and selling real estate, [and] was an employer under the Act" when Adams was injured and (2) "Adams's injuries were not proximately caused by intoxication." The Fund made both factual and legal arguments before the Commission. As a legal matter, the Fund urged the Commission to adopt a rule other states use, that what the Fund called "*de minimis*" rental activity is not a business or industry such that someone engaged in this type of activity is an employer for workers' compensation purposes. The Fund cited our precedents, including *Kroll v. Reeser*,[4] but it nonetheless asked the Commission to construe the Act consistently with "longstanding" cases from other states. The Fund argued "no evidence" showed that Heath "engaged in anything beyond *de minimis* rental

---

[4] 655 P.2d 753, 754, 756-57 (Alaska 1982) (remanding for Board to evaluate whether four-plex owner who planned to rent out three units was "employer" under Act).

activities" in 2011. It sought a legal ruling from the Commission that Heath was not an employer as defined in the Act.

The Fund maintained that the record as a whole did not support the Board's decision because "Heath's real estate activities [were] not unlike those of a typical homeowner." It pointed to his testimony that family provided him financial help and said the Bronx rental should not be included in the analysis. The Fund further argued that O&M Enterprise "was not a going business concern in 2011," emphasizing Heath's testimony that he had no real estate license. It asserted that the only "objective evidence" of Heath engaging in real estate was his "2011 tax returns and one expired business license from almost [20] years ago."

The Commission reversed the Board's first decision because, in the Commission's view, by focusing on the test distinguishing an employee from an independent contractor the Board applied an incorrect legal test. Based on the Commission's reversal of the first decision, it vacated the Board's reconsideration decision.[5] Looking at the distinction we made in *Kroll* between consumptive and productive roles that homeowners who also rent property can play,[6] the Commission

---

[5] Adams contends the Commission erred in focusing on the initial decision rather than the reconsideration decision. Although the Commission's decision to reverse the initial decision without directly reviewing the Board's legal analysis on reconsideration is puzzling, we conclude that any error is harmless. Despite the Commission's statement that the Board "miss[ed] the significant issue of whether . . . Heath was an employer or someone merely repairing his home," the Commission discussed the Board's reconsideration decision finding that Heath did business as O&M Enterprise and "was in the real estate business." The Fund's notice of appeal to the Commission from the reconsideration decision cited this exact finding.

[6] *See* 655 P.2d at 757 (inquiring whether construction activity was homeowner "cost-cutting shortcut" in consumptive role or part of homeowner "profit-making enterprise" in productive role).

decided that "substantial evidence in the record as a whole supports the conclusion the work on . . . Heath's home was consumptive rather than in furtherance of any profit[-]making activity." The Commission noted that Heath's 2011 tax return "shows that his only source of income" was rental income, reporting "no other income, whether personal or business." It said there was "no evidence, other than the rental income, that . . . Heath was in the real estate business" and pointed out that no evidence suggested that "Heath ever had a real estate license."

The Commission decided that no evidence in the record supported the Board's reconsideration finding that Heath was doing business as O&M Enterprise and was in the real estate business, observing that there was "no evidence" Heath "complied with Alaska law regarding real estate licenses." The Commission said there was "no evidence of any profit-making enterprise undertaken by . . . Heath through which the cost of workers' compensation insurance could be passed to an end consumer," concluding from this that "Heath was not an employer as defined by the Act." "The Commission decline[d] to address the issue of . . . [Adams's] intoxication" because its conclusion that Heath was not an "employer" made the issue "moot." Adams appeals.

## III. STANDARD OF REVIEW

In an appeal from the Commission, we review the Commission's decision and not the Board's.[7] "We apply our independent judgment to questions of law that do not involve agency expertise, including issues of statutory interpretation."[8] We independently evaluate the Commission's legal conclusion about substantial evidence

---

[7] *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017).

[8] *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016).

to support the Board's decision, which "necessarily requires us to independently review the record and the Board's factual findings."[9]

## IV. DISCUSSION

### A. There Is No *De Minimis* Rule Distinguishing, As A Matter Of Law, Consumptive From Productive Roles In Real Estate Rentals.

The Act defines "employer" broadly: "a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state."[10] But we observed in *Gaede v. Saunders* that the definition "excludes private common law employees who are employed other than 'in connection with a business or industry.' "[11] The questions in this case are (1) whether the activity Adams was performing when he was injured was in connection with a "business or industry" and (2) whether that determination is one of law or of fact.

Adams asserts the Commission erred when it decided that "substantial evidence in the record as a whole support[ed] the conclusion the work on . . . Heath's home was consumptive." Adams contends the Commission inappropriately reevaluated the evidence to reach this conclusion because the Board found otherwise and substantial evidence in the record supports the Board's decision. The Fund responds that the Commission simply "reach[ed] its own legal conclusion" about the evidence. The Fund asks us to hold that as a matter of law some *de minimis* level of rental activity exempts a property owner from being an "employer" as defined in the Act.

The Fund discusses our precedents distinguishing between consumptive and productive uses of labor, the distinction relied on in the Commission's decision. The

---

[9]     *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[10]     AS 23.30.395(20).

[11]     53 P.3d 1126, 1127 (Alaska 2002) (quoting AS 23.30.395).

Fund contends that in *Kroll* we recognized "that owning and renting a handful of residential units does not necessarily amount to a productive business that can pass the cost of workers' compensation insurance to consumers."[12]  It asks us to interpret *Kroll* consistently with other states' cases[13] excluding certain levels of rental activity as a matter of law from workers' compensation coverage.

In our view the issues presented are no different than those in *Kroll*; we therefore provide a detailed summary of that case.  Kroll, "a serviceman with a cable TV company," wanted to build a four-plex with three rental units and one unit to house his family.[14]  Kroll asked a contractor licensed in another state who was in Alaska on other business to work on the building.[15]  The contractor brought his two sons to help, and Kroll hired a few additional workers.[16]  One son was injured and sought workers' compensation benefits from Kroll.[17]  The Board decided Kroll was the injured worker's employer, in part based on the contract between Kroll and the out-of-state contractor.[18] We reversed, holding that the injured worker was an employee but remanding for the Board to decide who had been the employer.[19]

---

[12]     *See* 655 P.2d 753 (Alaska 1982).

[13]     *E.g.*, *Setter v. Wilson*, 37 P.2d 50, 52 (Kan. 1934).

[14]     *Kroll*, 655 P.2d at 754.

[15]     *Id.*

[16]     *Id.* at 754-55.

[17]     *Id.* at 755.

[18]     *Id.*

[19]     *Id.* at 755, 757.

We decided the Board misconstrued the statutory phrase "in connection with a business or industry coming within the scope of this chapter" in the definition of "employer."[20]  The Board interpreted it as "*all business or industry is to be considered as covered by the Act*."[21]  We disagreed with this broad interpretation, explaining:

> [T]he policy question is whether Kroll's construction activity, either by itself or as an element of his rental activities, was a profit-making enterprise which ought to bear the costs of injuries incurred in the business, or was the construction activity simply a cost-cutting shortcut in what was basically a *consumptive* and not a *productive* rol[e] played by Kroll.[22]

We required the Board to consider on remand "the threshold issue of whether Kroll's construction activity was sufficient to establish his status as an employer."[23]

In *Gaede* we relied on *Kroll* to affirm a Board decision that homeowners who hired an individual to work on their residence were not employers under the Act.[24] In *Gaede* "there was no 'business or industry' aspect to the . . . building project" because "the house was intended to be used only as [a] family residence."[25]  Because the project lacked a connection to a "business or industry," the owners were not employers; the worker thus was not entitled to workers' compensation.[26]

---

[20]     *Id.* at 757.

[21]     *Id.* (emphasis in original).

[22]     *Id.* (emphases in original) (footnote omitted).

[23]     *Id.*

[24]     53 P.3d 1126, 1127 (Alaska 2002).

[25]     *Id.*

[26]     *Id.*

In this case the Commission relied on *Kroll*'s distinction between productive and consumptive roles to determine that Heath was not an employer as a matter of law. The Commission did not explain how Heath's rental activities differed so significantly from those described in *Kroll* as to remove them from the Act's coverage. The homeowner in *Kroll* planned to rent out three units,[27] the same number of rental units that Heath owned and rented out in 2011. And the homeowner in *Kroll*, in contrast to Heath, had employment and a source of income unrelated to his construction and rental activities.[28] Our remand in *Kroll* for the Board to evaluate the evidence shows that we did not consider renting three units to be so minimal as to exclude an employer from workers' compensation coverage as a matter of law.[29]

The Fund cites cases from several states holding that some small rental endeavors are exempt from workers' compensation as a matter of law. While some states have such a legal rule,[30] others, like Alaska, consider the question to be one of fact.[31] As the Utah Supreme Court said: "The point at which the ownership of leased

---

[27]     655 P.2d at 754.

[28]     *Id.*

[29]     *See id.* at 757.

[30]     *E.g.*, *Stewart v. Workers' Comp. Appeals Bd.*, 218 Cal. Rptr. 245, 247-48 (1985); *Setter v. Wilson*, 37 P.2d 50, 52 (Kan. 1934); *Kaplan v. Gaskill*, 187 N.W. 943, 947 (Neb. 1922).

[31]     *See Trudell v. Hibbert*, 272 P.3d 331, 342 (Alaska 2012) (noting distinction between productive and consumptive uses based on "ability to pass on to consumers the cost of workers' compensation insurance" as test for differentiating business from homeowner but disagreeing with superior court's "application of the test to the facts").

or rented property becomes a business . . . is usually a question of fact . . . ."[32]  The Montana Supreme Court likewise considers "the facts and circumstances surrounding the alleged employment" when evaluating coverage,[33] describing the line "between what is and what is not employment" under its workers' compensation statute as "vague and shadowy."[34]

We adhere to our precedent and decline to adopt a judicially created rule designating a specific number of rental units or a certain level of management as per se consumptive activity.  The line the Fund asks us to draw is better suited to the legislature, which can adopt an explicit rule if it believes one is needed.[35]  Because Heath's status as an employer is a question of fact, not one of law, we next consider the Commission's conclusions about substantial evidence in the record.

**B.     Substantial Evidence In The Record Supports The Board's Decision.**

The Commission concluded that substantial evidence in the record did not support the Board's decision; the Commission decided instead that substantial evidence supported only the conclusion that the work at the Snow Bear Drive property was consumptive.  Adams argues that the Commission did not properly conduct substantial evidence review, disregarded the Board's credibility determinations, and used its own interpretation of the evidence to arrive at its legal conclusions.  Adams maintains that

---

[32]     *Sorenson v. Indus. Comm'n*, 598 P.2d 362, 364 (Utah 1979).

[33]     *Weidow v. Uninsured Emp'rs' Fund*, 246 P.3d 704, 710 (Mont. 2010).

[34]     *Nelson v. Stukey*, 300 P. 287, 288 (Mont. 1931), *quoted in Colmore v. Uninsured Emp'rs' Fund*, 121 P.3d 1007, 1011 (Mont. 2005), *overruled in part on other grounds by Davis v. State*, 187 P.3d 654 (Mont. 2008).

[35]     *Cf. Ranney v. Whitewater Eng'g*, 122 P.3d 214, 221 (Alaska 2005) (observing line drawing that "involves balancing the benefits of greater precision against its costs . . . is within the legislature's competence").

substantial evidence in the record supported the Board's findings that Heath was engaged in the real estate business in 2011 and that the work was done to further a business interest.

In contrast the Fund asserts: "[E]vidence demonstrates that . . . Heath was an unsophisticated homeowner who earned a modest income through three rental units . . . ." The Fund disagrees that the Commission engaged in fact finding and contends the Commission simply reached a different legal conclusion than the Board without disturbing any factual findings.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[36] When applying the substantial evidence standard of review, "we may not reweigh the evidence or choose between competing reasonable inferences."[37] Considering these standards, we hold that substantial evidence in the record supports the Board's decision that Heath was an employer under the Act and the Commission erred by not so concluding.

The Board made a number of relevant findings, noting first Heath's deposition testimony that his business was "buying, selling, and renting real estate." The Board also found that an expired business license for O&M Enterprise listed real estate as its business, and Heath testified that "everything he does, he does as O&M." The Board found that in 2011 Heath owned not only the Snow Bear Drive property but also a duplex in New York, "from which he collected rent." The Board included in its factual summary Heath's statement that his occupation in 2011 "probably" was "real estate."

---

[36] *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000) (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

[37] *Bailey v. Litwin Corp.*, 713 P.2d 249, 252 (Alaska 1986). The Commission follows this rule as well. *See, e.g.*, *Municipality of Anchorage v. Mahe*, AWCAC Dec. No. 129 at 6 (Mar. 16, 2010), http://labor.state.ak.us/WCcomm/memos-finals/D_129.pdf.

Based on those facts, the Board concluded that Heath doing business as O&M Enterprise was engaged in the "business or industry" of "buying, managing, and selling real estate."

Substantial evidence in the record supports the Board's findings. Heath's testimony was, as the Board found, "evasive, contradictory, and equivocal." But, like a jury in a civil trial, the Board could "believe all, part, or none"[38] of Heath's testimony.[39] The Board certainly was entitled to rely on what could be characterized as an admission against interest:[40] Heath's testimony that his occupation in 2011 was "buying, selling, and renting" real estate. Heath's testimony, coupled with his income tax return showing income only from real estate rentals and the sale of his trailer, is evidence supporting the Board's conclusions.

We reject the Fund's argument that having little income removes Heath's business from the Act's "business or industry" standard. A business is not exempt from providing workers' compensation coverage simply because it has little income.[41] Nor is Heath's lack of a real estate license material to his participation in that business, as the Commission found. A real estate license is not required to rent or sell one's own

---

[38] *See* Alaska Civil Pattern Jury Instruction 02.08 ("You may believe all, part, or none of the testimony of any witness.").

[39] *See* AS 23.30.122 (giving Board "sole power to determine" witness credibility and making Board's findings "subject to the same standard of review as a jury's finding in a civil action").

[40] *Cf.* Alaska R. Evid. 804(b)(3) (excluding from hearsay rule statements against interest).

[41] *See* AS 23.30.075(a) ("An employer . . . shall . . . insure and keep insured for the employer's liability under this chapter . . . .").

property,[42] as Heath did. And Heath's failure to renew the O&M Enterprise business license is not dispositive evidence that he did not conduct business as that entity as the Commission surmised. Heath's statement that "[e]verything [he did] is part of O&M Enterprise" supports the Board's decision that he in fact continued doing business as O&M Enterprise, even if he did not comply with the legal business operating requirements.

The Commission stated there was "no evidence" that the work on the Snow Bear Drive property "benefit[t]ed any business" Heath pursued. But repairing a rental apartment's leaky roof presumably benefits the property owner's rental business because a landlord has a duty to "keep the premises in a fit and habitable condition."[43] The Commission commented on the "limited" evidence that Heath undertook any business from his home, but it did not discuss the photograph of Heath's studio or Adams's credible testimony, corroborated to an extent by Heath, about Heath using the studio for his entertainment business. Additionally, Heath's prior use of his home address on business licenses for O&M Enterprise permits the inference that he conducted business from his home, even if he testified that his business's only physical office was his post office box.

The Commission cited Heath's lack of any source of income other than the three rental units he owned to support its decision that work on the Snow Bear Drive home was consumptive. The Commission failed to explain why a tax return reporting income almost solely from rental properties could not be interpreted as evidence that Heath was involved in the real estate business in 2011, as he testified at his deposition. Heath said his tax return reported all of his 2011 income, and it showed no other source

---

[42]   AS 08.88.900(a)(1).

[43]   AS 34.03.100(a)(1).

of income. Adams, whom the Board found credible, testified the work he was doing was intended to fix a leak affecting the part of Heath's home that he was renting out. Heath's lack of income from any source other than his rental properties together with Adams's testimony support the Board's conclusion that Heath's rental business benefitted from the work.

We also note that Heath listed the Snow Bear Drive property as a multi-family residence on Schedule E of his 2011 income tax return. As the Montana Supreme Court said about a similar issue: "Listing the property on Schedule E represents to the Internal Revenue Service that the taxpayer uses the property as business rental property."[44] This evidence supports the Board's determination that Heath was engaged in the "business or industry" of "buying, managing, and selling real estate" and the conclusion that the roof repair was done as part of that business.

The Commission erroneously concluded that the evidence before the Board could support only a finding that Heath's employment of Adams was consumptive rather than productive. Substantial evidence supports the Board's decision that Heath was an employer engaged in the "business or industry" of "buying, managing, and selling real estate" and that the work Adams did was part of that business.

C.    **On Remand The Commission Must Consider The Intoxication Issue.**

The Commission did not make a decision about the intoxication issue, saying that the issue was "moot." The Fund's brief before us summarized the issue but did not ask us to review or decide it. Adams contends the issue should be remanded to the Commission. Because we reverse the Commission's decision that Heath was not an

---

[44]    *Weidow v. Uninsured Emp'rs' Fund*, 246 P.3d 704, 711 (Mont. 2010).

employer under the Act, the Fund's appeal of the intoxication issue is ripe for review. On remand the Commission must consider the Fund's appeal of that issue.[45]

## V.    CONCLUSION

We REVERSE the Commission's determination that Heath was not an employer, and we REMAND to the Commission for consideration of the intoxication issue.  We do not retain jurisdiction.

---

[45]    *Cf. Jordan v. State*, 420 P.3d 1143, 1158-59 (Alaska 2018) (remanding case for further findings when constitutional protection was related to reasonable expectation of privacy and trial court had made no relevant findings).