Jacquelyn PARRIS–EASTLAKE,
Appellant,

v.

STATE of Alaska, DEPARTMENT
OF LAW, Appellee.

No. S–9156.

Supreme Court of Alaska.

July 20, 2001.

Dale W. House, and Brad E. Ambarian, Lane, Powell, Spears, Lubersky, LLP, Anchorage, for Appellant.

Kristin S. Knudsen, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

An assistant district attorney applied for workers' compensation, claiming that "[w]ork-related stress was a substantial factor in creating headaches, neck and back pain and a resulting addiction to prescription medication." The Alaska Workers' Compensation Board held that AS 23.30.235(2), which prohibits recovery for any injury proximately caused by an "employee being under the influence of drugs unless the drugs were taken as prescribed," barred her claim for

work-related drug addiction. The superior court affirmed, and the employee appeals. We reverse the superior court's decision and remand because we hold that AS 23.30.235(2) does not bar recovery when the injury itself is addiction.

## II. FACTS AND PROCEEDINGS

### A. The Development of the Addiction

Jacquelyn Parris–Eastlake began working as an assistant district attorney in Fairbanks in November 1990. During her employment she suffered recurring headaches and occasional neck and back pain.

Dr. J. Michael Carroll began regularly prescribing narcotic painkillers to treat her pain in June 1993. Parris–Eastlake's use of painkillers accelerated in April and May 1994. Parris–Eastlake testified that after taking painkillers in April 1994, she noticed that she was "enjoying" a "buzz." Parris–Eastlake also began seeing Dr. Roy S. Pierson about neck pain, a problem soon diagnosed as a herniated disk. He also prescribed painkillers. Her psychiatrist, Dr. Robert D. Schults, testified that Parris–Eastlake had a "heightened interest" in narcotics in April and May 1994, but that it was "unlikely that she was physiologically addicted" at that point.

Parris–Eastlake continued to receive prescription painkillers from Dr. Carroll through the summer of 1994. In August 1994 she saw a neurologist about headaches and neck and arm pain. He recommended that Dr. Carroll prescribe further painkillers. Parris–Eastlake also received painkillers from a dentist in late August and early September for tooth pain.

On October 1, 1994, Parris–Eastlake was injured when she fell down a flight of stairs at home. She was admitted to the hospital for three days for "pain control" and was treated with several narcotic painkillers. Dr. Pierson prescribed more painkillers when she left the hospital, but she continued to have headaches and pain from the herniated disk. Parris–Eastlake testified that at some point between April and October 1994, she began lying to her doctors and exaggerating pain in order to get more painkillers.

Dr. Pierson had long encouraged Parris–Eastlake to have neck surgery on her herniated disk. She ultimately agreed, and Dr. Pierson performed the surgery on November 11, 1994. Parris–Eastlake received morphine, Demerol, Percocet, and Vicodin while in the hospital. After she left the hospital, Parris–Eastlake began showing signs that she was addicted to painkillers. She stated in an interrogatory answer that after this surgery, she began using the painkillers to deal with stress, rather than to treat pain. On November 29 Parris–Eastlake visited Dr. Pierson to complain of a growing dependency on the painkillers. On December 20 Dr. Carroll met with Parris–Eastlake and they began a program designed to address her now full-blown addiction.

The Alaska Workers' Compensation Board later concluded that Parris–Eastlake was physically addicted to painkillers no later than December 1994, and Parris–Eastlake agrees. Parris–Eastlake testified that over the next eight months she "spent a lot of time figuring out how I was going to get [more painkillers]." She engaged in "drug-seeking" activities, including lying to her doctors, exaggerating her pain to get medication, and hoarding pills for later use in higher-than-prescribed doses. During this time, Parris–Eastlake had considerable difficulty at work on an interpersonal level, due in part to her drug addiction. In August 1995 Parris–Eastlake checked into a drug detoxification center, and agreed to resign from her job with the district attorney's office.

### B. The Workers' Compensation Claim

Parris–Eastlake filed a workers' compensation claim in October 1995 alleging work-related injuries including "headaches, back & neck pain, and drug addiction." Two board members—a quorum under AS 23.30.005(f)—formed a panel and held a hearing; the board issued its decision in October 1996. The board acknowledged its obligation under AS 23.30.120(a) to presume that the injury was both work-related and "not proximately caused ... by the employee being under the influence of drugs" used not as prescribed by a physician. But it found that Parris–East-

lake had engaged in "drug-seeking behavior," including "exaggerating symptoms, and deceiving her physicians in order to obtain narcotics" beginning in April or May 1994. The board found that Parris–Eastlake's own testimony regarding her drug-seeking behavior was substantial evidence to rebut the presumption of AS 23.30.120(a)(3) that her addiction was not caused by her being "under the influence."

The board then concluded that the "overwhelming preponderance of the evidence" showed that Parris–Eastlake's drug addiction "came about because of her systematic drug abuse and drug seeking behavior under the influence of that abuse." The board also found that "the drugs obtained by the employee during the spring of 1994 [to treat her headaches] were not sufficient to cause physical addiction." These two findings controlled the board's ultimate decision, because AS 23.30.235(2) precludes compensation for an injury "proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician." The board concluded that Parris–Eastlake's addiction "was proximately caused by her being under the ongoing influence of improperly obtained drugs," and thus that AS 23.30.235(2) barred her claim for compensation.

Although the board's conclusion that the statute barred Parris–Eastlake's claim disposed of her claim, the board nonetheless then addressed her contention that work had been a substantial factor in the development of her drug addiction. The two panel members disagreed as to this contention; one found that Parris–Eastlake's work was a substantial factor in the development of her addiction; the other did not. Because both panel members agreed that subsection .235(2) applied, their disagreement on the substantial-factor issue did not alter the outcome. The board therefore declined to ap-

point a third panel member to break their "tie." The board made no findings at all regarding the work-relatedness of Parris–Eastlake's headaches, neck pain, and back pain.

Parris–Eastlake appealed to the superior court, which affirmed the board's denial of her claim. Parris–Eastlake appeals.

## III. DISCUSSION

### A. Standard of Review

 We directly review the merits of a decision of the Alaska Workers' Compensation Board, giving no deference to the decision of the superior court in its capacity as an intermediate court of appeal.[1] When evaluating the board's factual findings, we apply the "substantial evidence" test in order to ensure that there is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[2] As we have previously stated, " 'it is not the function of the court to re-weigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.' "[3] But on questions of law where no agency expertise is involved, we will substitute our judgment for that of the board.[4]

### B. Applying AS 23.30.235(2)

Alaska Statute 23.30.120(a)(3) requires that the board presume that the claimed injury was not "proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician."[5] If substantial evidence rebuts this presumption, the board turns to AS 23.30.235, which provides:

> Compensation under this chapter may not be allowed for an injury ... (2) proximately caused by intoxication of the injured employee or proximately caused by the employee being under the influence of

---

1. See Thompson v. United Parcel Serv., 975 P.2d 684, 687–88 (Alaska 1999).

2. Id. at 688 (quoting Interior Paint Co. v. Rodgers, 522 P.2d 164, 170 (Alaska 1974)).

3. Id. (quoting Interior Paint Co., 522 P.2d at 170)

4. See id.

5. Functionally, this subsection must be read to presume that the injury was not proximately caused by the employee "being under the influence of drugs [if] the drugs were taken as prescribed by the employee's physician."

drugs unless the drugs were taken as prescribed by the employee's physician.[6]

The board found that substantial evidence rebutted the initial presumption of subsection .120(a)(3). The board then found by a preponderance of the evidence that "being under the ongoing influence" of drugs had proximately caused Parris–Eastlake's addiction; the board consequently concluded that subsection .235(2) barred her claim.

■ We must determine whether subsection .235(2) applies here. Parris–Eastlake argues that it applies to cases in which an employee's intoxication or state of "being under the influence" is the proximate cause of *another* workplace injury, and not to cases in which the claimed injury is the addiction itself. Critical to her claim is her assertion that her addiction was her injury. The state argues that the subsection plainly applies to any injury proximately caused by the misuse of prescription drugs, and that addiction should be treated no differently. We agree with Parris–Eastlake that where addiction to drugs or alcohol is itself the injury claimed by a worker, subsection .235(2) does not act to bar a claim. In reaching this conclusion, we are informed by our understanding of the purpose for which the legislature amended subsection .235(2) to include impairment by drugs in its exclusion.

We think it impossible to construe the meaning of "being under the influence" without referring to the preceding clause in the statute regarding "intoxication." The Alaska

Workers' Compensation Act has long included a provision barring any injury caused by a worker's "intoxication." [7] The board has interpreted "intoxication" according to its "common and approved usage," that being "[a] condition of being drunk, having the faculties impaired by alcohol." [8] The board has applied the clause to the claim of an intoxicated employee injured while driving,[9] the claim of an intoxicated construction worker who fell off a roof,[10] and the claim of an intoxicated steelworker who fell off a ladder.[11]

The legislature amended subsection .235(2) in 1982 to add the second clause, to deal with employees who are injured while "under the influence" of drugs other than alcohol.[12] To construe the scope of the term "under the influence," we look to the rest of the subsection.[13] The term "under the influence" therefore must be read as parallel to "intoxication." In both cases, the question is whether the worker was "impaired" as a result of alcohol or drugs. Moreover, although no direct legislative history exists, when the legislature enacted this amendment, there was some controversy about whether an employee could be "intoxicated" by substances other than alcohol.[14] The Larson treatise concludes that the modern view supports a conclusion that " 'intoxication' includes intoxication by drugs," but that view was by no means obvious in 1982.[15] The language added in 1982 served to ensure that intoxication or impairment by drugs was encompassed by the subsection .235(2) exclusion.[16]

6. AS 23.30.235(2).

7. *See* ch. 193, § 33(2), SLA 1959.

8. *Beebe v. Nabors Alaska Drilling*, 1987 WL 95328 at *2 (Alaska Workers' Comp. Bd.1987) (quoting Webster's Ninth New Collegiate Dictionary (1984 ed.)).

9. *See id.* at *1.

10. *See Naccarato v. Naccarato Constr.*, AWCB No. 97–0074, 1997 WL 1049300 at *1 (Alaska Workers' Comp. Bd.1997).

11. *See Cottrell v. Northern Rental Serv.*, AWCB No. 98–0300, 1998 WL 1119670 at *1 (Alaska Workers' Comp. Bd.1998).

12. *See* ch. 93, § 20, SLA 1982.

13. Professor Singer explains that "the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases … [because] ordinarily the coupling of words denotes an intention that they be understood in the same general sense." 2A Norman J. Singer, *Sutherland on Statutory Construction* § 47.16, at 265–69 (6th ed.2000).

14. *See* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 36.03[9], at 28–30 (1999) (discussing then-unsettled interpretation of "intoxication").

15. *See id.* at 30.

16. In a recent case interpreting and applying subsection .235(2), the board treated the term "being under the influence" in terms of "impairment." *See Peart v. C Xpress, Inc.*, AWCB No.

■ Our reading of the statute compels us to reject the broader interpretation adopted by the board, which reasoned that being "under the ongoing influence of drugs" includes drug-seeking behavior, lying to get drugs, and drug abuse. Instead, we conclude that, for an injury to be "proximately caused by the employee being under the influence of drugs" within the meaning of subsection .235(2), the employee must be "under the influence of drugs" in the sense that the employee's mental or physical faculties must be impaired by use of drugs, and the employee's impaired condition must proximately cause the injury. A common example would be a worker whose judgment or coordination becomes impaired by consumption of drugs and who consequently suffers a traumatic injury.[17]

■ Here, Parris–Eastlake's drug use and drug-seeking behavior undeniably contributed to her addiction. But the only physical or mental impairment that she suffered as a result of her drug use was the addiction itself. Because Parris–Eastlake's addiction is the injury for which she seeks compensation, rather than the proximate cause of her injury, and because the record discloses no other drug-induced impairment of faculties that proximately caused Parris–Eastlake's addiction, we conclude that subsection .235(2) does not bar her from claiming that her employment caused or contributed to her addiction.

### C. Remand for Consideration of the Work–Relatedness of Parris–Eastlake's Addiction

Parris–Eastlake must show by a preponderance of the evidence that her addiction injury was work-related.[18] Although the board unanimously agreed that subsection .235(2) applied, precluding her claim, it nonetheless addressed the work-relatedness of her addictions. But the two-member panel did not agree as to whether Parris–Eastlake had proved that her addiction was work-related. Panel member John Giuchici would find by a preponderance of the evidence that "the employee's condition did not arise in the course and scope of ... her work." Panel member William Walters would find that "the stress of the employee's work was also a substantial factor in the development of her addiction." The panel chose not to appoint a third member to resolve this disagreement because both members of the panel had concluded that subsection .235(2) barred recovery.

■ On remand, if the board still disagrees on this issue, it must appoint a third panel member to decide whether Parris–Eastlake has proved by a preponderance of the evidence that her addiction was work-related. We have held that the board may appoint a third member to a panel to break a tie, even if the third member only reviews the record.[19] The board has discretion to decide whether the newly appointed member should review the current record, or whether additional evidence and argument should be permitted.[20]

Parris–Eastlake asks us to review the record and hold that substantial evidence does not support panel member Giuchici's finding that her addiction was not work-related. We decline to do so, because further proceedings before the board will be necessary on remand. Assuming the two panel members still disagree on the work-relatedness issue, the appointment and vote of a third member may make our review unnecessary. And the possibility that the board may hear additional evidence on this issue confirms that we should decline to perform the record review Parris–Eastlake requests.

00–0165, 2000 WL 1126771 at *25 (Alaska Workers' Comp. Bd.2000).

17. *See, e.g., Goebel v. Warner Transp.,* 612 N.W.2d 18, 20–22 (S.D.2000) (upholding denial of benefits to truck driver who crashed vehicle while under influence of methamphetamine and marijuana because drug use was substantial factor in causing accident). See also the board decisions cited above in footnotes 8, 10, and 11.

18. *See Steffey v. Municipality of Anchorage,* 1 P.3d 685, 690 (Alaska 2000).

19. *See Schmidt v. Beeson Plumbing & Heating, Inc.,* 869 P.2d 1170, 1177–78 (Alaska 1994).

20. *See* AS 23.30.135.

## D. Alternative Theories and Additional Considerations Concerning Work–Relatedness

Parris–Eastlake has offered two closely related but analytically distinct theories of recovery on her addiction claim. First, she argues that workplace stress was a substantial factor that directly caused her addiction. In her brief before the board, Parris–Eastlake argued that she became addicted after she used painkillers, "not so much for dealing with the pain of the [neck] surgery, but as a way of dealing with the stress of her work." In other words, Parris–Eastlake claims that in order to treat workplace stress she took prescription drugs not as prescribed. She also argued, however, that her addiction arose directly out of her treatment for the separate headaches and back and neck pains. She argues in her appellate briefs that "her addiction was itself a consequence of treatment for work-related headaches and other pain" and that "but for her work-related stress which caused her tension head and neck pain, she would not have become addicted to the medication prescribed." This is a "direct consequences" theory of recovery.[21]

The board may consider either theory on remand. However, the board must also consider whether any intervening events or conduct cut off any relationship between work and addiction. For example, the board should consider whether Parris–Eastlake's intentional use of drugs not as prescribed during the pre-addiction period of April 1994 to December 1994 was conduct outside the course of employment, and whether the causal chain should be deemed broken.[22] The board may also deem the causal chain broken if it determines that Parris–Eastlake acted negligently or intentionally by taking painkillers in violation of her prescriptions in the same pre-addiction period.[23] And finally, the board should consider whether any intervening events occurred, such as Parris–Eastlake's exposure to painkillers during her non-work-related hospital stays in October and November 1994, that superseded the work-relatedness.

## E. Remanding to Consider the Work–Relatedness of Parris–Eastlake's Headaches, Back Pain, and Neck Pain

The board also must determine on remand the work-relatedness of Parris–Eastlake's initial claim for "headaches, neck & back pain." The board's decision did not determine whether the headaches, back pain, or neck pain were work-related. The superior court concluded that the board's silence regarding the work-relatedness of the headaches, back pain, and neck pain should be read as a failure on Parris–Eastlake's part to "adequately address and prove" those injuries. Parris–Eastlake argues that the board erred by failing to make any findings on this question.[24]

Parris–Eastlake established a prima facie link between these injuries and her work. As early as December 1993, Dr. Carroll had identified "a heavy court schedule" as being potentially related to her headaches. In February 1994 he noted that "work related tension" aggravated her headaches. Parris–Eastlake herself had told Dr. Carroll that she thought the headaches were related to job stress. She satisfied the need for a prima facie link.

 Once the prima facie link was shown, the presumption of compensability at-

---

**21.** *See* 1 Larson & Larson, *supra* note 14, § 10.01, at 3 ("The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.").

**22.** *See id.* § 10.05, at 12 ("When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct.").

**23.** *See id.* § 10.06[3], at 17–20 (discussing negligent acts by employees that cause subsequent injuries); *id.* § 10.06[4], at 26–27 (noting that "intentional violation of an express or implied prohibition of treatment may break causal chain").

**24.** The state argues that Parris–Eastlake waived this argument by failing to list the issue in her points on appeal. But the fifteenth and sixteenth points on appeal are broad enough to encompass this argument.

tached and the burden shifted to the state to demonstrate by substantial evidence that the injury was not work-related.[25] "The Board need only make findings with respect to issues that are both material and contested." [26] Once Parris–Eastlake made her prima facie showing of work-relatedness, it was clearly contested. But the board made no findings on this claim. "When the Board fails to make a necessary finding, we cannot fill the gap by making our own determination from the record; we must remand to the Board." [27] We therefore remand and instruct the board to determine whether Parris–Eastlake's headaches, neck pain, or back pain were work-related.

### F. Treating Parris–Eastlake's Addiction as a Physical Injury

■ The state argues in the alternative that substance abuse disorder is a mental illness and that Parris–Eastlake's case is more appropriately considered under the mental illness standard of AS 23.30.395(17). The board treated Parris–Eastlake's drug dependency as a physical addiction. Dr. Schults testified that any addiction such as Parris–Eastlake's is partially a physical dependency. The state has produced no evidence to rebut the settled medical authority that treats drug addiction or dependence as having a physiological component.[28] We cannot conclude that the board erred by treating Parris–Eastlake's addiction claim as a physical injury.

### IV. CONCLUSION

We REMAND for further proceedings consistent with this opinion. If the two-person panel does not unanimously resolve the issue of work-relatedness as to each of

Parris–Eastlake's claims, it must appoint a third member to consider that issue.

CARPENETI, Justice, not participating.

**25.** See Stephens v. ITT/Felec Serv., 915 P.2d 620, 624 (Alaska 1996).

**26.** Bolieu v. Our Lady of Compassion Care Ctr., 983 P.2d 1270, 1275 (Alaska 1999).

**27.** Id.

**28.** See, e.g., 3A Lawyer's Medical Cyclopedia § 17.15, at 23 (Richard M. Patterson ed. 4th ed. 1996) ("Substance dependence is a more severe and chronic form of abuse marked by physiologic dependence on the substance....."); Diagnostic and Statistic Manual of Mental Disorders 176 (Michael B. First et al. eds., 4th ed. 1994) ("The essential feature of Substance Dependence is a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues use of the substance despite significant substance-related problems." (emphasis added)).