*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, WORKERS' COMPENSATION BENEFITS GUARANTY FUND, | )<br>)<br>) Supreme Court No. S-17918<br>) |
| Appellant, | ) Alaska Workers' Compensation<br>) Appeals Commission No. 15-029<br>) |
| v. | ) O P I N I O N<br>) |
| VIRGIL A. ADAMS, MICHAEL A. HEATH d/b/a O&M ENTERPRISES, and MICHAEL A. HEATH TRUST, | ) No. 7624 – October 7, 2022<br>)<br>)<br>) |
| Appellees. | )<br>) |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Siobhan McIntyre and Kimberly D. Rodgers, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellant. Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellee Virgil A. Adams. No appearance by Appellees Michael A. Heath Trust and Michael A. Heath d/b/a O&M Enterprises.

Before: Winfree, Chief Justice, Maassen, Carney, and Henderson, Justices. [Borghesan, Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

The Alaska Workers' Compensation Act does not allow compensation for an injury proximately caused by the injured employee's intoxication. The Alaska Workers' Compensation Board decided that a carpenter who admitted using alcohol and cocaine before his injury had a compensable disability because it determined the accident would have happened regardless of his drug and alcohol use. The Workers' Compensation Benefits Guaranty Fund, which is responsible for payment if an employer defaults, appealed, arguing that the employee's intoxication barred compensation. The Workers' Compensation Appeals Commission affirmed the Board's decision because substantial evidence supported it. We affirm the Commission's decision.

## II. FACTS AND PROCEEDINGS

This is the second appeal stemming from Virgil Adams's 2011 work-related accident; we remanded the case to the Commission to consider the Fund's intoxication-defense appeal, which the Commission had not considered.[1] Facts are taken from our earlier decision, with additional details relevant to the intoxication issue drawn from the record.

Adams fell about 30 feet while attempting a roof repair on Michael Heath's rental property after cribbing underneath a ladder he was using gave way.[2] Adams is now permanently and totally disabled.[3] Adams admitted drinking beer and using cocaine

---

[1]     *Adams v. State, Workers' Comp. Benefits Guar. Fund*, 467 P.3d 1053, 1055, 1064 (Alaska 2020).

[2]     *Id.* at 1057.

[3]     *Id.* at 1055, 1057.

before the accident.[4] He testified that Heath supplied the cocaine, and Adams described the job site as "a revolving frat house," with beer readily available on site.[5] He acknowledged that he had not inspected the cribbing before climbing the ladder.[6]

Neither Heath nor the trust that owned the property had workers' compensation coverage.[7] Adams filed a workers' compensation claim and later joined the Fund as a party to the claim; the Fund controverted benefits based on Adams's intoxication.[8] During litigation the Fund raised additional defenses, and the Board held one hearing on all of them.[9] The Fund presented testimony from "a doctor certified to review drug and alcohol tests,"[10] Dr. Andris Antoniskis. Adams called as a witness the paramedic who treated him at the job site.

The paramedic testified that Adams admitted having three beers, but that he did not think Adams looked intoxicated. The paramedic did not observe bloodshot eyes and said Adams was not slurring his speech. The paramedic was concerned about Adams's alcohol consumption because of alcohol's interaction with pain medication the paramedic planned to administer. He gave Adams a small amount of medication. After

---

[4]    *Id.* at 1057.

[5]    *Id.* at 1056-57.

[6]    *Id.* at 1057.

[7]    *Id.* at 1055.

[8]    *Id.* at 1057; *see* AS 23.30.235(2) (disallowing compensation for injury "proximately caused by intoxication of the injured employee or proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician").

[9]    *Adams*, 467 P.3d at 1057.

[10]    *Id.*

seeing no adverse interaction, he administered more of the medication shortly afterward. Emergency room records showed that Adams had alcohol on his breath when he arrived; a blood test taken at 6:01 p.m. showed an alcohol level of 49 milligrams per deciliter.[11] A urine drug screen was positive for cocaine but no other drug.

Dr. Antoniskis wrote two reports based on records made available to him. His March 2013 report did not reach useful conclusions because he had little information. With respect to the positive test for cocaine, Dr. Antoniskis said there was "no way to determine impairment based on a urine drug test alone." He indicated the only inference he could make from the information he had was "that the cocaine was used somewhere within 48 to 72 hours" of urine sample collection. The information provided about the alcohol screening was equally scant: "no units of measure[,] . . . time of collection, . . . []or manner of collection" accompanied the report. Dr. Antoniskis's first report nonetheless concluded Adams would have had "some degree of impairment" from alcohol.

Dr. Antoniskis's July 2015 addendum had more specific conclusions about alcohol use because he had more records available. He estimated that Adams would have had a blood alcohol level of 71.5 milligrams per deciliter at the time of the accident and that with this level of blood alcohol Adams "would have had impairment of balance and speech, reaction time, and judgment." The addendum did not address cocaine use. Dr. Antoniskis "fe[lt] that Mr. Adams'[s] injuries [were] in large part due to his impairment," but aside from general statements about increased risk, he did not explain this conclusion.

Dr. Antoniskis testified at the hearing, giving more detail about both

---

[11]    The amount is equivalent to a breath alcohol measurement of .049. *Cf.* AS 28.35.030(a)(2) (setting out prohibited levels of .08 for operating motor vehicles in both blood and breath units).

cocaine use and calculations of blood alcohol level. He indicated that "the effects of cocaine typically last about 20 or 30 minutes from the standpoint of causing stimulation and agitation" and that mixing alcohol and cocaine "would certainly impair somebody's judgment more." He said that a person's "judgments and alertness could be impacted mixing the two together" and — specifically about Adams — that using cocaine "certainly could have had an impact also on his level of impairment and judgment." When asked whether Adams's intoxication could "have impaired his judgment regarding safety precautions like checking the ladder," Dr. Antoniskis agreed that "[t]here's a very good probability that the alcohol and the cocaine use would have had a negative effect on the judgment of not checking that."

On cross-examination Adams made the point that Dr. Antoniskis did not know when Adams actually consumed the alcohol, which could affect blood alcohol calculations. Dr. Antoniskis said alcohol will not show up in a blood test until it has been absorbed through the digestive system, which happens within 60 minutes of ingestion. Dr. Antoniskis's calculation assumed Adams's blood alcohol level had been falling the entire time period from the accident to the blood draw in the hospital, but he acknowledged that he did not know when Adams had his last drink. This raised the question whether Adams's blood alcohol level might have peaked later than Dr. Antoniskis assumed. Dr. Antoniskis said that he had nothing to show whether Adams had developed a tolerance for alcohol and testified that nothing in the EMT records showed that Adams was intoxicated when first responders attended to him.

In its closing argument the Fund emphasized testimony about intoxication, but it did not discuss how intoxication proximately caused the injuries. Its prehearing memorandum had one paragraph about proximate cause and Adams's intoxication, which offered several short arguments about causation without focusing on one.

The Board rejected all of the Fund's defenses, including the intoxication

defense, in an interlocutory decision. The Board found Adams credible. The Board summarized Dr. Antoniskis's testimony as extrapolating that Adams's "blood alcohol level was .071 at the time of the injury" even though Dr. Antoniskis conceded that "he had no way of knowing when [Adams] drank his last beer, or the strength of the beers." The Board characterized Dr. Antoniskis's testimony about "the level of impairment caused by" Adams's cocaine use as "less certain," saying that Dr. Antoniskis "was unable to give a concise opinion on that point."

The Board listed factors that Dr. Antoniskis agreed might have affected Adams's intoxication level; noted that "Dr. Antoniskis could not say with certainty whether [Adams's] blood alcohol level was still rising at the time his blood was drawn, or had begun to decline"; and called Dr. Antoniskis's "opinion on . . . [Adams's] level of impairment . . . , at best, an educated guess." Based on its own experience, judgment, and observations, the Board found that different people "experience different levels of impairment from consuming the same number of alcoholic drinks, depending on tolerance," with some "unable to . . . complete tasks requiring motor skills, while others might perform with little or no visible impairment." The Board found that "intoxication was not the reason for the fall" because the fall resulted from the cribbing giving way.

In its analysis, the Board said there was "no evidence alcohol or drug impairment played any role in the failed cribbing" that caused the fall and that there was "no logical connection." As a result, the Board thought Dr. Antoniskis's opinions were not dispositive, and it gave those opinions less weight. The Board decided "[t]he weight of the evidence supports a conclusion that loose cribbing supporting the ladder gave way, which would have caused anyone to fall" and concluded that intoxication was not a proximate cause of Adams's accident.

In June 2017 the Board issued its final decision, concluding that Adams was entitled to most of the compensation benefits he sought and that Heath, or the Fund if

Heath defaulted, was entitled to an offset for Social Security disability benefits.

The Fund revived an appeal it had filed after the interlocutory decision about the affirmative defenses, setting out two grounds for appeal: (1) whether Heath and his company were engaged in a business or industry and thus were employers; and (2) whether Adams's intoxication proximately caused his injuries.[12]

The Commission reversed the Board's decision about Heath's status as an employer but declined to address the intoxication issue because that reversal made the issue moot.[13] Adams appealed to us; we reversed the Commission's decision and remanded the case to the Commission so it could consider the intoxication issue.[14]

On remand the Commission, in a divided decision, affirmed the Board's decision that Adams's injury was not proximately caused by intoxication, concluding that substantial evidence in the record supported the Board's determination. The Commission set out the presumption analysis applicable in intoxication cases[15] and agreed with the Board that Adams had attached the presumption his injury was not proximately caused by intoxication. It also agreed that the Fund had rebutted the presumption with Dr. Antoniskis's testimony and other medical evidence.

The Commission first considered whether "the [l]egislature . . . intended

---

[12]  *Adams*, 467 P.3d at 1059.

[13]  *Id.* at 1059-60.

[14]  *Id.* at 1064.

[15]  The Commission previously set out a framework for what it called negative presumptions in AS 23.30.120(a), requiring an employer to provide substantial evidence to rebut the presumption that the injury was not proximately caused by the employee's intoxication. *See Marsh Creek, LLC v. Benston*, AWCAC Dec. No. 101, at 20 (Mar. 13, 2009), https://labor.alaska.gov/WCcomm/memos-finals/D_101.pdf (setting out framework in intent-to-injure case).

intoxication alone to be a complete defense to a work injury" and decided the legislature had not intended to deny a claim simply because the employee was intoxicated. The Commission relied on the statutory language and *Parris-Eastlake v. State, Department of Law*[16] to conclude that AS 23.30.235(2) requires both that the employee be impaired by alcohol or drugs (or both) and that the employee's impaired condition be "the proximate cause of the injury." After noting that it was bound by the Board's credibility determinations and the weight the Board gave the evidence, the Commission concluded that substantial evidence in the record supported the Board's decision because the Board determined the accident happened when the cribbing gave way, which was supported by Adams's credible testimony.

The Commission discounted the Fund's argument that "Adams would not have been on the roof nor fallen from the ladder absent his alcohol and cocaine use." Acknowledging Adams's testimony that he did not check the cribbing before he climbed the ladder, the Commission observed there was no evidence he would have checked it if he had been sober. Additionally there was no "evidence that the ladder slipped for any other reason than the loose cribbing."

The dissent would have remanded the case to the Board so that it could "reassess" its decision and explain in more detail its conclusion that the cribbing and not Adams's intoxication "was the cause of the accident." The dissent's "assessment of the facts" led it to conclude that Adams "was impaired to a degree that would affect his judgment and balance, and that his impairment would have been the primary, or proximate cause, to the circumstances that led to his . . . injuries."

The Fund appeals.

---

[16]     26 P.3d 1099 (Alaska 2001).

## III. STANDARD OF REVIEW

In an appeal from the Commission, we review the Commission's decision and not the Board's.[17] We review de novo the Commission's legal conclusion that substantial evidence supports the Board's factual findings by "independently reviewing the record and the Board's factual findings."[18] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] "Whether the quantum of evidence is substantial is a question of law."[20] "Whether the [B]oard made sufficient findings is a question of law that we review de novo."[21]

## IV. DISCUSSION

### A. The Commission Correctly Concluded That Substantial Evidence In The Record Supported The Board's Decision.

The Alaska Workers' Compensation Act prohibits compensation for an injury "proximately caused by intoxication of the injured employee" or "by the employee being under the influence of drugs."[22] In *Parris-Eastlake*, which involved drug use, we concluded that

> for an injury to be "proximately caused by the employee being under the influence of drugs" within the meaning of

---

[17]     *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017).

[18]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[19]     *Id.* at 1179 (quoting *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000)).

[20]     *Id.*

[21]     *Pietro v. Unocal Corp.*, 233 P.3d 604, 611 (Alaska 2010) (alteration in original) (quoting *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006)).

[22]     AS 23.30.235(2).

subsection .235(2), the employee must be "under the influence of drugs" in the sense that the employee's mental or physical faculties must be impaired by use of drugs, *and* the employee's impaired condition must proximately cause the injury.[23]

We relied on Board decisions about intoxication to interpret the statute.[24]

The Act contains a related presumption, providing in pertinent part:

In a proceeding for the enforcement of a claim for compensation . . . it is presumed, in the absence of substantial evidence to the contrary, that . . . the injury was not proximately caused by the intoxication of the injured employee or proximately caused by the employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician.[25]

An employer has the burden of proving an affirmative defense in a workers' compensation case.[26] The Fund acknowledges it had the burden of proving that Adams's injury was proximately caused by his intoxication. Because two factors — intoxication and proximate cause — must be shown, if the Board concluded the Fund failed to prove either factor, the Board could reject the defense. The Commission therefore correctly determined that denying Adams compensation for a work-related injury required finding both that Adams was intoxicated *and* that the intoxication proximately caused the injury.

The Fund asserts the Commission "narrowed the definition" of proximate

---

[23]    26 P.3d 1099, 1104 (Alaska 2001) (emphasis added).

[24]    *Id.* at 1103-04.

[25]    AS 23.30.120(a)(3).

[26]    *Anchorage Roofing Co. v. Gonzales*, 507 P.2d 501, 504 (Alaska 1973); *see also Egemo v. Egemo Constr. Co.*, 998 P.2d 434, 438 (Alaska 2000) (holding that employer had burden of proof "to establish the affirmative defense of failure to file a timely claim").

cause, but the Commission never attempted to define the term. The Fund sets out the legal standard for proximate cause we articulated in *State v. Abbott*, which requires a showing that "but for" an act or omission "the accident would not have happened" and that the act or omission "was so important in bringing about the injury that reasonable [people] would regard it as a cause and attach responsibility to it."[27] Adams does not dispute this definition of proximate cause but contends that proximate cause is a question for the trier of fact. We therefore evaluate the evidence using the legal standard from *Abbott*.

The Fund argues that the Commission applied the law too stringently to the facts of the case and that the evidence detracting from the Board's decision is so disproportionate to the evidence supporting it as to make the evidence supporting the decision not substantial. The Fund's main theory of causation on appeal[28] has been that Adams was intoxicated so that his judgment was impaired when he began the roof repair. It asserts that his impaired judgment caused him to fail to inspect the cribbing closely before using the ladder. In its brief before us the Fund amplifies the cribbing's potential danger by discussing weather conditions, which it implies would have increased the likelihood of instability. We agree with Adams that the Fund's theory necessarily assumes the cribbing's weakness was apparent or observable before the collapse because otherwise inspecting the cribbing would have had no effect on the accident. The Fund tries to cast doubt on findings underpinning the Board's analysis, including a suggestion that Adams in fact lost his balance, and asserts the Board needed to make more explicit

---

[27]     *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972).

[28]     The Fund did not clearly set out a specific causation analysis before the Board. The Fund's argument merely set out information about the weather, the pitch and composition of the roof, testimony about inspecting the cribbing, and a reference to Adams's experience in construction and safety precautions.

findings about Adams's intoxication. Adams emphasizes the Board's findings, its authority to weigh evidence and determine credibility, and the factual nature of proximate cause determinations to argue that substantial evidence supports the Board's decision.

### 1. The Board was entitled to give Dr. Antoniskis's testimony little weight.

The Fund contends the Commission erroneously failed to reverse the Board's decision to discount Dr. Antoniskis's testimony. Characterizing the testimony as "unequivocal and supported by medical evidence," the Fund maintains the Board "mischaracterize[d]" the testimony and discounted it solely because the Board saw the testimony as uncertain. Adams responds that the Board properly evaluated the evidence and that the Commission followed the statute when reviewing the Board's findings.

As Adams notes, Dr. Antoniskis did not give an opinion about proximate cause. He gave an opinion about Adams's blood alcohol level at the time of the accident and said that level would affect his judgment. Dr. Antoniskis added that using cocaine as Adams described would, in combination with the alcohol, have a further negative impact on Adams's judgment. The Board decided, in light of its finding that the cribbing's failure caused the accident, that Dr. Antoniskis's opinion about Adams's intoxication level was "not dispositive" and gave it "less weight." We see nothing erroneous in this analysis.

The Fund's assertions about the clarity and certainty of Dr. Antoniskis's opinions gloss over Adams's and the Board's questions about the assumptions underlying those opinions. To estimate Adams's alcohol level at the time of the accident, Dr. Antoniskis used known facts — the approximate time of the accident and the time and results of the blood test — but also made assumptions. From hospital and emergency response records, Dr. Antoniskis knew about 90 minutes passed between the

911 call and the blood test. Dr. Antoniskis admitted he did not know when Adams drank the alcohol or had his last drink, but he assumed Adams's blood alcohol was falling the entire time period between the accident and the blood test, indicating it had peaked at the time of or prior to the accident.

Dr. Antoniskis testified that alcohol cannot be measured by a blood test until it has been absorbed through the digestive system, which can take up to 60 minutes but more typically takes 45 to 50 minutes. His assumption that Adams's blood alcohol had peaked by the time of the accident thus appears to rest on an additional assumption about when Adams drank because otherwise there is no way to know whether the alcohol had been absorbed and was causing impairment at the time of the fall.[29] The Fund acknowledges there is no evidence about either when Adams consumed the three beers he reported drinking or how fast he drank them. As a result, the Fund's reliance on Dr. Antoniskis's statement that Adams's blood alcohol level had peaked by the time the blood was drawn is unavailing; the level needed to have peaked at the time of the accident for the calculation to be accurate. Adams testified he was "on [his] third" beer when he climbed the ladder. The Board could infer from this testimony that Adams continued to drink while he was working.

The Fund attempts to shift to Adams the burden of providing additional

---

[29]     We agree with the Fund that the Board incorrectly wrote that Dr. Antoniskis could not say whether Adams's blood alcohol level "was still rising at the time his blood was drawn." No evidence suggested that Adams consumed alcohol in the 90 minutes between the accident and the blood draw. In light of Dr. Antoniskis's testimony that alcohol is absorbed within 60 minutes of consumption, the absence of evidence of further alcohol consumption indicates Adams's blood alcohol level had peaked by the time of the blood draw. But this error does not undermine the Board's analysis. Dr. Antoniskis could not say with certainty whether the blood alcohol level had peaked *at the time of the accident*, even though he assumed this to be the case and that assumption was fundamental to his calculation.

evidence about his alcohol consumption by contending no evidence supports the possibility that Adams drank three beers in rapid succession immediately before climbing toward the chimney. But the Fund, not Adams, had the burden of proving the affirmative defense it was asserting,[30] and nothing in the record supports the Fund's theory. The Fund deposed Adams twice and cross-examined him at the hearing, so the Fund had ample opportunity to elicit this important information from Adams.

Absent a more detailed time line of the day's events or a more particularized opinion about how Adams's intoxication resulted in his injury, the Board could reasonably give less weight to Dr. Antoniskis's testimony. The Commission appropriately accepted the Board's assessment and the weight the Board assigned to the opinion.

### 2. The Commission correctly deferred to the Board's assessment of witness credibility.

The Fund sets out facts and inferences favorable to its position and concludes that based on those favorable facts and inferences "a reasonable person would consider Mr. Adams's intoxication a cause of his injury." But this is not the standard we use to evaluate whether substantial evidence supported the Board's decision. We consider whether facts exist in the record that support the Board's decision; we do not choose between competing inferences because the legislature has given the Board authority to determine witness credibility and to weigh evidence.[31] A Board finding "concerning the weight to be accorded a witness's testimony . . . is conclusive even if the

---

[30]     *Anchorage Roofing Co.*, 507 P.2d at 504.

[31]     *See Brown v. Patriot Maint., Inc.*, 99 P.3d 544, 548 (Alaska 2004).

evidence is conflicting or susceptible to contrary conclusions."[32] "The [B]oard has the sole power to determine the credibility of a witness."[33] The Board's credibility determinations are binding on the Commission,[34] as the Commission recognized.

Here the Board found Adams credible. Based on this credibility finding, the Board decided Adams did not lose his balance or slip but that the cribbing's failure caused the ladder to fall, which in turn caused Adams to fall. The Board found: "Although [Adams] had alcohol and cocaine in his system at the time he fell from the ladder, intoxication was not the reason for the fall. Loose cribbing supporting the ladder gave way, which caused [Adams] to fall and would have caused anyone to fall." In essence the Board decided that Adams's alcohol and drug use was not a "but for" cause of the accident because the loose cribbing would have given way and caused anyone on the ladder to fall, intoxicated or not.

The Fund asserts that this finding "strains logic" and is "arbitrary and unreasonable," largely because the finding rests on Adams's testimony. Adams responds that "equipment can break causing a worker to be injured regardless of what is in their system" and points out that inspection does not always reveal defects that lead to accidents. The Board's finding that Adams was credible supports its decision because the failure of the ladder's support on an uneven surface would cause the ladder to collapse no matter who was on it.

The accident was unwitnessed for the most part, so credibility played an important role in the Board's decision. Other testimony about the accident does not

---

[32] AS 23.30.122.

[33] *Id.*

[34] AS 23.30.128(b); *Sosa de Rosario v. Chenega Lodging*, 297 P.3d 139, 146 (Alaska 2013).

contradict the Board's conclusion. One person inside the house at the time of the accident testified that he saw "a ladder flying off the roof and Virgil[] bouncing off the porch." Another worker indicated that it looked to him as though the cribbing had given way based on his observation of the cribbing after the fall. Heath provided contradictory testimony during the litigation and gave only vague information about the day of the accident, claiming not to know why Adams was at his house.[35] Even if the Board could have reached other conclusions based on different inferences, the Board could also reasonably reach the conclusion it did based on the evidence before it. On appeal "[w]e should not ' "reweigh the evidence or choose between competing inferences," but [we should] simply determine whether such evidence exists.' "[36] In this case evidence supporting the Board's decision does exist, and that evidence is substantial. We thus see no error in the Commission's conclusion that substantial evidence supported the Board's decision.

### 3. The Board's findings about Adams's impairment were adequate.

The Fund argues separately that the Board's findings about Adams's impairment were inadequate. The Commission concluded that "Adams was undoubtedly impaired by the use of alcohol and cocaine" and that substantial evidence supported a finding that "the ladder slipped and [Adams] fell due to the loose cribbing giving way." We see nothing erroneous in the Commission's conclusions. The Board's findings about how the accident happened decreased the need for detailed findings about Adams's impairment level because as the Board conceptualized the accident, Adams's impairment was not a but-for cause of the cribbing's failure. As the Commission wrote, "[N]o one

---

[35] *Adams v. State, Workers' Comp. Benefits Guar. Fund*, 467 P.3d 1053, 1058 (Alaska 2020).

[36] *Cowen v. Wal-Mart*, 93 P.3d 420, 424 (Alaska 2004) (second alteration in original) (quoting *Steffey v. Mun. of Anchorage*, 1 P.3d 685, 689 (Alaska 2000)).

presented any evidence that the ladder slipped for any other reason than the loose cribbing."

The causation chain the Fund posits relies on an assumption that Adams's intoxication was the reason he failed to inspect the cribbing. The Commission correctly observed that it was unclear whether Adams would have inspected the cribbing had he been sober.[37] And the Commission noted Adams's testimony that "he had been on the ladder several times since he first placed the cribbing and the ladder had been fine."

Finally, the Fund relies on Adams's testimony to argue that he admitted he should have checked the cribbing and that this "admission" showed that intoxication led to his failure to inspect the ladder. But the record does not support the broad reading the Fund gives the testimony. When asked whether he "usually check[ed] the cribbing on the ladder," Adams answered, "For your safety, yes, you should." Adams admitted in his deposition not checking the cribbing on the day of the accident, adding, "I should have, would have, could have — wish I would have, could have a lot of things." At the hearing, he repeated this, saying, "I could have, should have, would have. There's many different things that we could have done differently." But he also testified that "visibly, [the cribbing] looked fine." This equivocal testimony, which also suggests regret, does not support the Fund's assertion that Adams's testimony is consistent with its causation theory.

We conclude that the Board made adequate findings and the Commission correctly determined that substantial evidence in the record supported the Board's

---

[37] Workers' compensation benefits are awarded without regard to fault, so neither the employer's nor the employee's failure to follow safety rules takes an accident outside of the Act. *See Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1207 (Alaska 2018) (affirming Board decision not to consider Alaska Occupational Safety and Health report that documented employer's failure to follow safety regulations when deciding compensation case).

finding that Adams's intoxication did not proximately cause his injury.

## V.    CONCLUSION

We AFFIRM the Commission's decision.